Donald Pet *v.* Department of Health Services
ET AL.
(13163)

Peters, C. J., Healey, Glass, Covello and Hull, Js.

Argued February 4—decision released May 10, 1988

*Thomas J. Ring,* assistant attorney general, with whom were *Paul J. Lahey,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh, Richard J. Lynch* and *Arnold B. Feigin,* assistant attorneys general, for the appellants (defendants).

*James A. Wade,* with whom were *Kathleen C. Stone* and *Caren A. Senter,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The issue on this appeal is whether the trial court erred in granting interlocutory injunctive relief to the plaintiff physician in an administrative action brought by the defendant department of health services (department) before the defendant Connecticut medical examining board (board).[1] The department alleged that the plaintiff, Donald Pet, a psychiatrist, had violated General Statutes § 20-13c[2] by, inter alia, not providing proper psychiatric care and treatment to certain patients. We find error and remand the case to the trial court because the plaintiff failed to exhaust his administrative remedies.

It is necessary to set out briefly the procedural history of the action. In an amended statement of violations,

[1] The department of health services and the Connecticut medical examining board are agencies of the state within the meaning of General Statutes § 4-166. The department exists pursuant to General Statutes § 19a-1 et seq. and the board exists pursuant to General Statutes § 20-8a et seq. The board consists of nine members, six of whom are physicians, and is authorized to "(1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints against practitioners and (3) impose sanctions where appropriate." General Statutes § 20-8.

[2] General Statutes § 20-13c provides: "RESTRICTION, SUSPENSION OR REVOCATION OF PHYSICIAN'S RIGHT TO PRACTICE. GROUNDS. The board is authorized to restrict, suspend or revoke the license or limit the right to practice of a physician in accordance with section 19a-17, when the board finds that such physician is unable to practice medicine with reasonable skill or safety for any of the following reasons: (1) Physical illness or loss of motor skill, including but not limited to deterioration through the aging process; (2) emotional disorder or mental illness; (3) abuse or excessive use of drugs, including alcohol, narcotics or chemicals; (4) illegal, incompetent or negligent conduct in the practice of medicine; (5) possession, use, prescription for use, or distribution of controlled substances or legend drugs, except for therapeutic or other medically proper purposes; (6) misrepresentation or concealment of a material fact in the obtaining or reinstatement of a license to practice medicine; or (7) violation of any provision of this chapter or any regulation established hereunder."

the department charged that the plaintiff provided psychiatric care to employees, engaged in sexual conduct with patients, mishandled the "transference phenomenon" with several patients, and improperly conducted "sexological examinations" of the genital areas of several patients. After the plaintiff was served with a notice of hearing on or about April 15, 1986, he filed the following motions on May 6, 1986: a motion for disclosure and production; a motion for hearing by the entire medical examining board; a motion for issuance of subpoena duces tecum; a motion for a more specific statement; and a motion for continuance. The board granted a continuance until June 24, 1986, and required the department to include every statute and regulation that it claimed had been violated by the plaintiff. The rest of the motions were denied by the board as were the following motions: a motion to dismiss filed on June 12, 1986; a motion for a continuous hearing and retention of the same panel members to hear these proceedings to conclusion; and a motion for sequestration of witnesses filed on June 23, 1986. Although the motion for a continuous hearing was denied, the panel chairperson expressed his willingness to schedule consecutive hearing dates on weekends if it could be worked out among all parties.

The hearing commenced on June 24, 1986. A second hearing date was scheduled for August 19, 1986, but was postponed at the plaintiff's request. It was eventually held on November 4, 1986. Two additional hearing dates were scheduled for December 2 and December 16, 1986, but these were also continued at the request of the plaintiff. In the meantime, the plaintiff instituted an action in the Superior Court in which he applied for a temporary injunction and order to show cause on November 13, 1986. The defendants department and board filed a motion to dismiss on December 4, 1986, claiming that the plaintiff had failed to

exhaust his administrative remedies. The trial court, *O'Neill, J.,* denied this motion on January 15, 1987.[3] The plaintiff also filed an amended complaint on December 11, 1986, adding a second count based on 42 U.S.C. § 1983.[4] The plaintiff's action seeking injunctive relief was heard on January 28, 1987. In its decision, the trial court, *Spada, J.,* inter alia, rejected, the defendants' renewed claim of failure to exhaust administrative remedies, denied the plaintiff's request for a hearing by the full board, determining rather that General Statutes § 4-179 governs the manner of majority voting, and concluded that the plaintiff had proven both irreparable harm and an inadequate remedy at law. The trial court, *Spada, J.,* issued the following orders on February 17, 1987: "(1) The plaintiff is accorded the right of pre-hearing discovery, concomitant to those rights provided under our civil rules of discovery. (2) The complaining witness' testimony is to be stricken if she continues to remain silent because of the exercise of her attorney-client privilege. (3) The plaintiff is entitled to have his case recommenced on or before May 1, 1987; scheduling shall be performed so that this hearing is concluded on or before June 30, 1987. Time exceptions

---

[3] The trial court, *O'Neill, J.,* held that the allegations, if proven by the plaintiff, would "easily lead a court to conclude that he was not receiving a fair hearing." Although the plaintiff has asserted that this trial court found in his favor, this decision, as in any motion to dismiss, was predicated on construing the allegations most favorably to the nonmoving party, in this case the plaintiff.

[4] Title 42 of the United States Code, § 1983 provides: "CIVIL ACTION FOR DEPRIVATION OF RIGHTS.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

may be allowed by the court for necessary discovery or by mutual agreement of the parties. (4) Whichever member of the panel participates in the decision shall be required to either hear the case or read the record in toto. The defendants are enjoined from proceeding further against the plaintiff on their hearing of the amended statement of charges dated June 9, 1986, by virtue of Sec. 20-8a (e), unless compliance is effectuated by the defendants of the orders promulgated herein."

The defendants appealed the decision to the Appellate Court and this court transferred the case to itself pursuant to Practice Book § 4023.

On appeal, the defendants claim that the trial court erred in: (1) concluding that the plaintiff was not required to exhaust his administrative remedies and had no adequate remedy at law; (2) concluding that irreparable harm had been established; (3) ordering that the plaintiff be accorded prehearing discovery "concomitant" to what is provided in the civil rules of discovery; (4) ordering that each board member who participates in the decision be required either to hear the case or to read the record in toto; (5) ordering that the ongoing hearing before the board recommence on or before May 1, 1987, and conclude on or before June 30, 1987, absent further court order; and (6) ordering that the testimony of a witness in the hearing before the board be stricken if she continued to exercise her attorney-client privilege as she had done. We agree with the defendants that the plaintiff failed to exhaust his administrative remedies.

I

" 'It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must

be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358–59, 377 A.2d 1099 (1977); *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 282, 362 A.2d 1354 (1975); see 3 Davis, Administrative Law § 20.01; General Statutes §§ 4-175, 4-183.' *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 588, 424 A.2d 285 (1979)." *Cummings* v. *Tripp,* 204 Conn. 67, 75, 527 A.2d 1230 (1987). "Because the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff['s] claim." *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556, 529 A.2d 666 (1987). " ' "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings." ' *Chzrislonk* v. *New York, N.H. & H. R. Co.,* 101 Conn. 356, 358, 125 A. 874 (1924)." *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985).

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." *Concerned Citizens of Sterling* v. *Sterling,* supra, 557; *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* supra. "The doctrine of exhaustion 'furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review.' *Watergate II Apartments* v. *Buffalo Sewer Authority,* 46 N.Y.2d 52, 57, 385 N.E.2d 560, 412 N.Y.S.2d 821 (1978)." *Cahill* v. *Board of Education,* supra, 242. Most important, a favorable outcome will render review by the court unnecessary as the United States Supreme Court has noted: "A complaining party may be successful in vindicating his rights in the administrative process. If

he is required to pursue his administrative remedies, the courts may never have to intervene." *McKart* v. *United States,* 395 U.S. 185, 195, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969); see *Kashani* v. *Nelson,* 793 F.2d 818, 825–26 (7th Cir. 1986); *Connecticut Bank & Trust Co.* v. *CHRO,* 202 Conn. 150, 156, 520 A.2d 186 (1987).

The defendants assert that "when a party has a statutory right of appeal from a decision of the administrative agency, he may not, instead of appealing, bring an independent action to test the very issues which the appeal was designed to test." *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979); *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 685, 485 A.2d 1272 (1984). The defendants claim that General Statutes § 4-183 (a)[5] provides the proper avenue for reviewing an agency's actions. We agree. Not only does that statute provide a right of appeal from a final agency decision by an aggrieved party, but it also includes an immediate right to appeal from an adverse preliminary ruling if review of the final agency decision would not provide an adequate remedy. Moreover, the statutory framework includes a means of staying an agency decision pending appeal. General Statutes § 4-183 (c).[6] Thus, a potentially aggrieved party is well protected by statute. Although the plaintiff complains of the adverse effects of the board's actions, he chose not to avail himself of the safeguards under § 4-183 (a).

[5] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

[6] General Statutes § 4-183 (c) provides: "The filing of the petition does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms."

There are some exceptions to the exhaustion doctrine, "although we have recognized such exceptions only infrequently and only for narrowly defined purposes." *LaCroix* v. *Board of Education,* 199 Conn. 70, 79, 505 A.2d 1233 (1986). Among the exceptions is where recourse to the administrative remedy would be futile or inadequate; *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 541–42, 469 A.2d 382 (1983); or where there is a constitutional challenge to the propriety of the procedures followed by the administrative agency. *LaCroix* v. *Board of Education,* supra. The trial court held that the administrative remedy provided in this case would be "inadequate or futile." The trial court essentially gave the following reasons, upon which we elaborate below, for its decision: the plaintiff was denied pretrial discovery, which fundamental fairness and minimal due process require; the plaintiff's desire for a sequential hearing with time parameters would avoid "continued public calumny" and debilitation of the presentation of the case; and fairness and justice require the panel either to hear the evidence or read the transcript.

On appeal, the plaintiff has advanced four grounds for avoiding the usual requirement of exhaustion of administrative remedies. He maintains that: (1) exhaustion would be futile; (2) he would suffer irreparable harm; (3) his constitutional rights would be violated; and (4) he has filed a claim under 42 U.S.C. § 1983. Although he lists these four claims to avoid being required to exhaust his administrative remedies, the plaintiff's first three claims essentially involve alleged violations and deprivations of constitutional rights that he argues are impossible to vindicate without permitting an exception to the exhaustion doctrine. The plaintiff correctly observes that a license to practice medicine is a recognized property right and may only be revoked under procedures that comport with constitutional

due process of law. *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). "The right to practice medicine is a property right of which a physician cannot be deprived without due process of law. *Aitchison* v. *State,* 204 Md. 538, 105 A.2d 495, cert. denied, 348 U.S. 880, 75 S. Ct. 116, 99 L. Ed. 692 (1954)." *Commission on Medical Discipline* v. *Stillman,* 291 Md. 390, 405, 435 A.2d 747 (1981); see *Farney* v. *Anderson,* 56 Ill. App. 3d 677, 683, 372 N.E.2d 151 (1978). In *Aitchison,* the Maryland Supreme Court noted that the right is subject to the police power of the state, saying: "[N]o person has an absolute vested right to practice medicine, but only a conditional right which is subordinate to the police power of the State to protect and preserve the public health. *Reetz* v. *People of State of Michigan,* 188 U.S. 505, 23 S. Ct. 390, 47 L. Ed. 563 [1903]." *Aitchison* v. *State,* supra, 544. The gravamen of the plaintiff's claim is that the procedures denied him at this stage of the proceeding are so lacking in providing the minimal due process constitutionally required that the extraordinary remedy of interlocutory injunctive relief in the Superior Court is justified.

Even claims of constitutional violations, however, are not always an exception to the general requirement of exhaustion. *Doe* v. *Heintz,* 204 Conn. 17, 34, 526 A.2d 1318 (1987); see *Florentine* v. *Darien,* 142 Conn. 415, 426–27, 115 A.2d 328 (1955). "Simply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process. *Sullivan* v. *State,* 189 Conn. 550, 554, 457 A.2d 304 (1983) . . . ." *LaCroix* v. *Board of Education,* supra, 79. "[D]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant 'might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore.' *Sullivan* v. *State,* supra, 559." Id., 87.

This court, however, has permitted a challenge to the constitutionality of the procedures followed by an administrative agency. Id. *LaCroix,* however, must be read in the light of its "specific circumstances." Id., 81. That case concerned an allegation by a teacher that he had been terminated and had been denied a hearing both prior to and four months subsequent to that termination. Id., 80. This basic constitutional deprivation of an " 'opportunity to be heard at a meaningful time and in a meaningful manner[';] *Kukanskis* v. *Griffith,* 180 Conn. 501, 509–10, 430 A.2d 21 (1980)"; id., 80–81; permitted the plaintiff to invoke the judicial process to vindicate his constitutional rights to due process. It was also significant that in *LaCroix* the defendant had also ignored a statutory mandate to hold a timely hearing. Although the plaintiff's allegations in this case do not approach the factual situation presented in *LaCroix,* he has raised colorable claims concerning deprivation of basic notions of due process. The broad relief given by the trial court, which we conclude was erroneous, causes us to discuss its treatment of those colorable claims. We will, however, examine the plaintiff's allegations only to decide whether the trial court's actions were necessary to ensure that the plaintiff's basic due process rights would not be violated at this juncture of the proceedings.[7] In doing so, we stress

---

[7] This court, however, has permitted a bypass of a direct appeal by a party raising a constitutional challenge when the party did not deliberately decide to bypass the direct appeal and the opposing party had not argued the foreclosing effect of that failure to the trial court. *Connecticut Light & Power Co* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979); see also *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 96 n.6, 448 A.2d 210 (1982). Despite the plaintiff's claims to the contrary, neither condition is satisfied in this case. The plaintiff *has* deliberately bypassed a direct appeal and the defendants *did* argue that the plaintiff had failed to exhaust his administrative remedies in its motions to dismiss. In contrast, the city of Norwalk did not appeal at the time of the deputy commissioner's ruling. Therefore, when the dispute arose, the time to appeal had expired. Thus, the court held that the city of Norwalk was not foregoing an appeal when it filed for injunctive action since an appeal was no longer possible.

that we continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy.

## A

The plaintiff claims that the department's denial of prehearing discovery prevented him from "a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan* v. *United States,* 304 U.S. 1, 18, 58 S. Ct. 773, 82 L. Ed. 1129, reh. denied, 304 U.S. 23, 58 S. Ct. 999, 82 L. Ed. 1135 (1938). The defendant asserts that there is no general due process right to prehearing discovery in an administrative proceeding. We agree with the defendant. "It is well-settled that parties to judicial or quasi-judicial proceedings are not entitled to pre-trial discovery as a matter of constitutional right." *National Labor Relations Board* v. *Interboro Contractors, Inc.,* 432 F.2d 854, 857–58 (2d Cir. 1970), cert. denied, 402 U.S. 915, 91 S. Ct. 1375, 28 L. Ed. 2d 661 (1971); *Federal Trade Commission* v. *Anderson,* 631 F.2d 741, 748 (D.C. Cir. 1979) ("[t]he Constitution does not require that a respondent in an administrative proceeding be aware of all evidence, information and leads to which opposing counsel might have access"). A number of state courts have rejected claims of pretrial discovery based on general due process rights. See, e.g., *Cooper* v. *Board of Medical Examiners,* 49 Cal. App. 3d 931, 943, 123 Cal. Rptr. 563 (1975); *Hanlon* v. *Board of Education of the Parkway School District,* 695 S.W.2d 930, 933 (Mo. App. 1985); *Marshall* v. *State Board for Professional Medical Conduct,* 73 App. Div. 2d 798, 799, 423 N.Y.S.2d 721 (1979). The Uniform Administrative Procedure Act (UAPA), which is the governing statute in this proceeding, does not expressly provide for pretrial discovery. Nevertheless, this court has held that the "procedures required by the UAPA exceed the minimal

procedural safeguards mandated by the due process clause." *Adamchek* v. *Board of Education,* 174 Conn. 366, 369, 387 A.2d 556 (1978); *Taylor* v. *Robinson,* 171 Conn. 691, 698, 372 A.2d 102 (1976).

Pretrial discovery may be expressly authorized by statute, but, absent an express provision, the extent to which a party to an administrative proceeding is entitled to discovery is determined by the rules of the particular agency. *Pacific Gas & Electric Co.* v. *Federal Energy Regulatory Commission,* 746 F.2d 1383, 1387 (9th Cir. 1984). Although the trial court also stated that the "inequities of this case mandate that the plaintiff be accorded the 'common law' right announced by the *Shively* [v. *Stewart,* 65 Cal. 2d 475, 421 P.2d 65, 55 Cal. Rptr. 217 (1966)] court," it cited no authority for its conclusion. *Shively,* upon which the trial court laid great stress, is not persuasive and is not the majority view. See *Waller* v. *Powers Department Store,* 343 N.W.2d 655, 657 n.2 (Minn. 1984) (noting that "[a] few courts [citing *Shively* and one other court] have taken the position that due process and fairness require that some form of access to information in the possession of an administrative agency be made available to one haled before the agency"). In *Shively,* a mandamus action, the court ordered certain discovery made available to the physician petitioner in a disciplinary proceeding which could have resulted in the loss of his license for allegedly performing abortions. In ordering the defendant board to issue certain subpoenas to obtain depositions and documents from the executive secretary of the board and its attorney prior to the disciplinary hearing, the *Shively* court said: "We are committed to the wisdom of discovery, by statute in civil cases . . . and by common law in criminal cases. . . . The criminal law analogy is appropriate here." *Shively* v. *Stewart,* supra, 479. In that context, it noted that the medical board had the resources to obtain complete

information and to prepare its case before filing an accusation. The court also pointed out that the agency was the "accuser," that it was a party and that "it ultimately makes a decision on the record"; this agency "concentration of functions calls for procedural safeguards." Id., 480. That court's statement that "[s]tatutory administrative procedures have been augmented with common law rules whenever it appeared necessary to promote fair hearings and effective judicial review" should not only be considered in the light of these observations but also in light of its statement that "[p]etitioners have been charged with crimes and should have the same opportunity as in criminal prosecutions to prepare their defense." Id., 479–80. The *Shively* decision is, therefore, distinguishable from this appeal before us.[8] Numerous courts have held that

---

[8] The trial court said that Rhode Island "provides the most compelling arguments for allowing discovery, employing the reasoning in *Shively* [v. *Stewart*, 65 Cal. 2d 475, 421 P.2d 65, 55 Cal. Rptr. 217 (1966),] as its predicate." It referred to Connecticut General Statutes § 19a-10 (concerning boards and commissions within the department of health services) as "almost identical" with General Laws of Rhode Island (1956) § 28-5-13 (G) (now § 29-5-7). This Rhode Island statute concerned the Fair Employment Practices Commission and provided that that agency had the following among its powers and duties: "In connection with any investigation or hearing . . . to hold hearings, subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person under oath, and, in connection therewith, to require the production for examination of any books and papers relating to any matter under investigation or in question before the commission." The statutes are not quite the same. The Rhode Island statute is broader than § 19a-10, which does not have any language about "investigation" at all.

The trial court then discussed the Rhode Island case of *La Petite Auberge* v. *Rhode Island Commission for Human Rights*, 419 A.2d 274 (R.I. 1980), which cited *Shively*. We do not agree with the trial court's analysis of *La Petite Auberge* vis-a-vis its "employing the reason in *Shively* as its predicate." Although the Rhode Island Supreme Court agreed with the fairness principle enunciated in *Shively*, it immediately footnoted that "agreement." That footnote said since the Rhode Island statute "is broad enough to empower the commission to issue discovery subpoenas at the request of a party to a contested case, *we do not need to hold, as the Shively court did,* that the common law supplies its own authority, in the absence of stat-

pretrial discovery is not a right that was recognized at common law. See, e.g., *Cooper* v. *Board of Medical Examiners,* supra, 945; *Howard Savings Institution* v. *Francis,* 133 N.J. Super. 54, 59, 335 A.2d 80 (1975); *People* v. *Bennett,* 75 Misc. 2d 1040, 1044, 349 N.Y.S.2d 506 (1973); 23 Am. Jur. 2d, Depositions and Discovery §§ 140, 307 (1965); 1 K. Davis, supra, § 8.15; see also *Altholtz* v. *Dental Commission,* 4 Conn. App. 307, 313, 493 A.2d 917 (1985) ("If our legislature wishes to provide further procedural safeguards . . . [in an administrative proceeding], it may do so. This is not a matter for judicial determination").

The plaintiff claims that *Matter of Doe* v. *Axelrod,* 123 App. Div. 2d 21, 26, 510 N.Y.S.2d 92 (1986), supports his position because there the court held that inadequate discovery regarding a complaining witness in a delicensure proceeding would be unconstitutional, thus justifying an interlocutory order. A divided court did reach the merits of the due process question, but a crucial part of the decision dealt with the authority of the commissioner to exercise authority over evidentiary rulings made by the administrative law officer. Id., 29. A close examination of *Axelrod,* however, does not at all give it the force for which the plaintiff contends. In rejecting the respondent's (commissioner of health) claim that the plaintiff had not exhausted his administrative remedies, the *Axelrod* majority said: "Nor is judicial intervention at this juncture an attempt to abort the adjudicatory process or to prevent the responsible licensing authority from proceeding with the statutory mandate, as asserted in the dissent. It is merely sought to prevent the Commissioner from

---

ute, to an administrative agency to issue subpoenas for discovery." (Emphasis added.) Id., 282 n.6. Thus, *La Petite Auberge* announced no common law right of discovery as claimed, but did interpret a Rhode Island statute. This alone attenuates the persuasion the plaintiff claims for *La Petite Auberge.*

exercising authority he does not have. He is nowhere given authority to make or overrule evidentiary rulings of the Administrative Law Officer, upon whom the Legislature has specifically conferred such authority." Id., 28–29. Going on to discuss the plaintiff's due process claim, the *Axelrod* majority, in noting the respondent commissioner's "misinterpretation" of the state statute involving confidentiality of any report of professional misconduct by a physician given to the state board, said that the purpose of the discovery sought by the petitioner physician was "not to disseminate any information regarding complainants, but rather to obtain information solely within the confines of the hearing." Id., 30. It said: "All petitioner wants to know is if any of the complainants, having *already testified,* has made a more timely complaint with regard to the allegations. This is a simple due process question. There is no attempt to dampen the incentive for a complainant to come forward. This proceeding is already confidential." (Emphasis in original.) Id. The dissenting opinion in *Axelrod* opined that the plaintiff had not exhausted his administrative remedies and a review of his due process claim should not be reached until a final adverse decision had been rendered on the merits. Id., 38 (Sullivan, J., dissenting). Whatever the similarities between *Matter of Doe* v. *Axelrod* and the present case, we conclude that the dissenting opinion in *Axelrod* articulates the better policy. See *Matter of Sinha* v. *Ambach Commissioner,* 91 App. Div. 2d 703, 457 N.Y.S.2d 603 (1982) ("[d]ue process considerations do not require the full panoply of procedural tools available to civil litigants in an administrative proceeding").

We conclude that the plaintiff is not entitled to a right, constitutional or otherwise, to general pretrial discovery that is "concomitant" to that required in civil cases in general. This does not mean that a party can be denied due notice of the hearing, the right to pro-

duce relevant evidence, the right to cross-examine witnesses produced by his adversary, and the right to be fairly apprised of the facts upon which the agency will act. *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 569, 345 A.2d 520 (1973). The plaintiff does not claim that these rights are categorically denied but instead, that the department's actions and the board's rulings have effectively curtailed any meaningful exercise of those rights. We conclude, however, that the fundamental notions of due process are recognized in the UAPA; see *Adamchek* v. *Board of Education,* supra; and have been followed by the board. The plaintiff has received reasonable notice of the hearings, applied for and received a more detailed statement of the charges, exercised his subpoena power, received one third of the department's investigative file and received several continuances at his request. This is not to say that, after a final determination by the board of this matter, if its decision is adverse to the plaintiff, a reviewing court will be prevented from addressing due process issues that may arise upon resumption of this hearing. There is no doubt that the minimal standards of due process have been met. After the hearing is over and if an adverse decision is rendered, an aggrieved party has the opportunity to argue that it has been denied meaningful exercise of its due process rights. To do so on this record, even before a decision is rendered, where the plaintiff has not proven that pursuing an available administrative remedy is demonstrably futile, would be disruptive of the administrative process. This is especially disruptive of the administrative process when it is entirely possible that there will be a favorable outcome to the party raising the due process claim. *McKart* v. *United States,* supra.

B

The plaintiff requested in his motion for a temporary injunction that, since the credibility of witnesses is uni-

quely important in this case, the full board (consisting of six doctors and three lay persons) hear the case. The trial court denied that request but ordered that any board member who participates in any vote be required to hear the case in its entirety or read the record in its entirety. The trial court based its decision on "fundamental fair play required by both our federal and state constitutions" but again cited no authority for its conclusion. The trial court's ruling was unwarranted. First of all, it was testified in the trial court that everyone who votes is informed that he or she must read the record and that anyone not at a hearing must read the transcript. Moreover, it is well established that this satisfies constitutional due process concerns. *Morgan* v. *United States,* supra, 17–18; *Jones* v. *Morris,* 541 F. Sup. 11, 18 (S.D. Ohio 1981), aff'd, 455 U.S. 1009, 102 S. Ct. 1699, 72 L. Ed. 2d 127 (1982); see *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 724, 345 A.2d 563 (1974). The board's practice also exceeds what is required by General Statutes § 4-179, which sets out additional safeguards for the plaintiff.[9] The trial court's order was erroneous as the plaintiff has not proven the demonstrable futility of pursuing the available administrative remedy.

## C

The plaintiff's next award of injunctive relief by the trial court was the ordering of a "continuous hearing."

---

[9] General Statutes § 4-179 provides: "PROPOSAL FOR DECISION. PROCEDURE. WAIVER. When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision. The proposal for decision shall contain a statement of the reasons therefor and of each issue of fact or law necessary to the proposed decision, prepared by the person who conducted the hearing or one who has read the record. The parties by written stipulation may waive compliance with this section."

The first hearing had been held on June 24, 1986, and the second one was not held until November 4, 1986. This period of delay resulted from requests for continuances by the *plaintiff*. Nevertheless, the trial court, finding that a protracted hearing was likely to cause irreparable harm to the plaintiff's practice, ordered that the next hearing date be set down no later than May 1, 1987, and that the case conclude no later than June 30, 1987. The trial court left the parties free to arrange a mutually satisfactory schedule within the parameters of that order. Only necessary discovery or unavoidable illness, said the trial court, would permit any modification of that schedule and such modification would have to be approved by the trial court. We will review such circumstances to the extent that the agency's practice violates a cognizable constitutional right that can be vindicated only by interlocutory injunctive relief.

The board's customary schedule contemplated a full day of hearings every two weeks in an individual case in light of the various hearings on other cases conducted by the board. It is undisputed that board members serve on an entirely voluntary basis. The department's representative estimated that without cross-examination, its case would take "at the most four days." The trial court, however, found that it was *"undisputed* that the hearing is likely to exceed twenty-one full hearing days."[10] (Emphasis added.) We note again, however,

---

[10] The trial court's finding that it was "undisputed that the hearing is likely to exceed twenty-one full hearing days" deserves some scrutiny. While it is fair to say that the plaintiff's counsel maintained during his presentation in the trial court that he anticipated his case would take a period of time, there was no "evidence" adduced to support this finding. *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 153–54, 496 A.2d 476 (1985). "[R]epresentations of the plaintiffs' counsel are not 'evidence' and certainly not 'proof.' " Id., 153. There is no claim that this twenty-one day period was an agreement or stipulation of counsel. It is, therefore, difficult to understand how the trial court could make such a finding, even assuming the plaintiff's case would take much longer than the four hearing days that the defendants' witness had testified that it would probably take for the defense case.

that the chairperson of the board panel did express his willingness to schedule hearing dates on Friday, Saturday and Sunday when he was free if it could be worked out.

The defendants argue that, under the test for due process of *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the hearing schedule passes constitutional muster. On the other hand, the plaintiff argues that only a continuous hearing of the type he claims can avoid the irreparable injury which has resulted from the delay. "A due process analysis requires balancing the governmental interest in existing procedures against the risk of erroneous deprivation of a private interest through the use of these procedures. *Mathews* v. *Eldridge,* [supra, 335]." *Petrowski* v. *Norwich Free Academy,* 199 Conn. 231, 235, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986). In *Mathews* v. *Eldridge,* supra, 348–49, the United States Supreme Court stated: "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and an opportunity to meet it.' . . . All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard' . . . to insure that they are given a meaningful opportunity to present their case." Under the *Mathews* v. *Eldridge* test, three factors must be considered: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id., 335. Although the private interest impli-

cated here is substantial, the risk of erroneous deprivation by the current process as compared to the plaintiff's proposal is minimal, especially with the additional safeguard of an appeal. Moreover, the interest of the government in not adopting the plaintiff's request is considerable. The board is made up of uncompensated members, two thirds of whom are physicians. The imposition of a continuous hearing requirement would undoubtedly make it difficult to find competent people willing to serve on the board. It is obvious that such a procedure was not contemplated when the administrative framework to hear complaints about physicians was established. We conclude that the board's suggested schedule to hear the department's case was a reasonable one that presents no obvious constitutional infirmity at this juncture. See *Cooper* v. *Board of Medical Examiners,* 49 Cal. App. 3d 931, 943, 123 Cal Rptr. 563 (1975). We note that in *Cooper,* the court said: "A policy which limits the number of days upon which the Committee will sit in any one month, and providing for continuances when necessary to hear a matter in full, is a reasonable means of accommodating both the interests of the Committee members and the individual parties who may appear before the body." Id. Although it was estimated that the plaintiff's defense would take considerably longer than the department's case, the time was not so long that it was an unconstitutional violation of due process or that relief by an interlocutory injunction was appropriate. Id. We also note again that it was the plaintiff who requested the continuances from June to November and from December to January. The record also shows that the board itself, sensitive to the need for a hearing that would not drag on for months, suggested that hearing dates that began on Friday and continued through the weekend would be appropriate if all parties could work out the details. In light of the forego-

ing, the trial court's order was erroneous as here, too, the plaintiff has not proven any demonstrable futility in pursuing the available administrative remedy.

## D

The final disputed order by the trial court concerned the striking of a witness' testimony if she continued to exercise her attorney-client privilege. The dispute arose when the principal complaining witness, W, testified at both the June and November hearings. At the latter hearing, the plaintiff sought to cross-examine W on the contents of a diary that she had completed in 1984. W testified that, at the request of her attorney in a pending civil lawsuit against the plaintiff, she had reviewed her diary several years after composing it. Using a different color pen, W circled certain code words and inscribed personal notes on the borders of particular pages. When the plaintiff cross-examined her on the reasons for such notations, W invoked her attorney-client privilege. The plaintiff's counsel examined her closely concerning the nature and invocation of the privilege, but she invoked it only once at this juncture. Although the trial court admittedly did not examine the diary, it held that the attempted cross-examination on it "could lead a trier to find bias, or self-serving efforts to strategize a complaint." The court ordered that, upon resumption of the hearing, if the witness persisted in claiming her attorney-client privilege, then all of her testimony would be stricken and not considered by the board.

The question of whether the right of the plaintiff to confront adequately this complaining witness against him via unfettered cross-examination has been impaired by the attorney-client privilege invoked by the witness is a difficult one. It is apparent, however, that an interlocutory injunction is not the proper vehicle by which to address this question in this case. The board has per-

mitted the plaintiff the general right to cross-examine the witnesses against him as is required by constitutional due process. The plaintiff does not have a valid constitutional claim that he has been denied his due process rights at this juncture of the proceedings. The plaintiff is complaining only about a single line of questioning that has been foreclosed by the board. Although arguably an important ruling, how this situation differs from any other evidentiary dispute that often arises in trial courts and administrative tribunals that does await normal appellate review is not satisfactorily illuminated. This court is often confronted with disputes about key evidentiary rulings on appeal. The proper way to claim the vindication of this evidentiary ruling is to object to the ruling, make clear the grounds for the objection, make an offer of proof, if appropriate, make an exception and then appeal to a reviewing body after a final decision. See Practice Book § 4065. If every party who was aggrieved by an evidentiary ruling, no matter how important it appeared at the time, were able to get interlocutory injunctive relief, the final judgment rule would cease to exist. The orderly process of administrative law would disappear. A number of courts have agreed with such a policy. See, e.g., *Barnes* v. *Chatterton,* 515 F.2d 916, 921 (3d Cir. 1975); *Frito-Lay, Inc.* v. *Federal Trade Commission,* 380 F.2d 8, 10 (5th Cir. 1967); *Christensen* v. *Iowa Civil Rights Commission,* 292 N.W.2d 429, 431 (Iowa 1980).

The trial court should not oversee and intervene in the administrative process as it did in this case. If every adverse ruling on motions presented in the early stages of administrative proceedings are subject to injunctive actions or other judicial intervention, the exception to the exhaustion doctrine would swallow the rule. "To permit judicial review, either by injunction or by declaratory judgment, of every procedural, preliminary and interlocutory order or ruling by which a person may

consider himself aggrieved, would afford opportunity for constant delays in the course of administrative proceedings and would render orderly administrative procedure impossible. Moreover, it would result in bringing to the court such an avalanche of trivial procedural questions as largely to monopolize their time and energies." *Utah Fuel Co.* v. *National Bituminous Coal Commission,* 101 F.2d 426, 432 (D.C. Cir. 1938), aff'd, 306 U.S. 56, 59 S. Ct. 409, 83 L. Ed. 483 (1939). The trial court's order that the witness' testimony be stricken if she continued to invoke her attorney-client privilege was erroneous. As with the plaintiff's other claims, he has not proven the demonstrable futility of pursuing the available administrative remedy.

## II

Another claimed exception to the exhaustion requirement is the filing of a § 1983 action. In this case, the § 1983 action was not filed in the original request for a temporary injunction but was added to the complaint by amendment filed in the Superior Court on December 11, 1986. The trial court did not rule either on the impact of the § 1983 count on the exhaustion requirement or on its impact on any ground of the relief it ordered in its twenty-six page memorandum of decision. Actually, the § 1983 count is not mentioned in its entire decision. Moreover, the defendants moved for articulation on the exhaustion issue but its motion was denied. The plaintiff has now offered this as a ground for avoiding the exhaustion doctrine. We disagree.

The United States Supreme Court has held that exhaustion of state administrative remedies is not a prerequisite to an action for damages under § 1983. *Patsy* v. *Board of Regents of the State of Florida,* 457 U.S. 496, 501, 102 S. Ct. 1699, 73 L. Ed. 2d 172 (1982); see also *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 690, 485 A.2d 1272 (1984). We also noted in *Laurel Park,*

*Inc.* v. *Pac,* supra, 691, which included a § 1983 count, that notwithstanding *Patsy* v. *Board of Regents of the State of Florida,* supra, the fundamental requirement of inadequacy of an available legal remedy in order to obtain injunctive relief remains in full force. In *Laurel Park, Inc.,* where, as here, it did not appear that the trial court relied on the viability of the § 1983 count in rendering judgment, we clearly said: "The inadequacy of an available legal remedy is a standard prerequisite for injunctive relief. We do not view *Patsy* v. *Board of Regents of the State of Florida,* supra, as having abrogated this fundamental requirement for injunctive relief even in the federal courts. A fortiori, it remains a condition precedent to injunctive relief in a state court, since none of the concerns expressed in *Patsy* that warranted this exception to the exhaustion doctrine would be applicable where the same tribunal must determine the issues whether raised in an administrative appeal or in a separate action." *Laurel Park, Inc.* v. *Pac,* supra, 691. As we explain below, the available legal remedy is adequate and no form of injunctive relief, under § 1983 or otherwise, is justified as an exception to the exhaustion requirement in this case even if we assume, arguendo, that the trial court ever considered the § 1983 count. The plaintiff appears to ask that his alleged irreparable injuries be remedied via a judgment under § 1983. He does not distinguish, however, any difference between the remedies sought under his count for a temporary injunction and the § 1983 count. In *Patsy* v. *Board of Regents of the State of Florida,* supra, and other leading cases, it was a § 1983 action for damages in federal court that the plaintiff argued should not be dismissed for failure to exhaust his state remedies. See, e.g., *Costello* v. *Fairfield,* 811 F.2d 782, 785 (2d Cir. 1987); *Solomon* v. *Emanuelson,* 586 F. Sup. 280, 284 (D. Conn. 1984). In contrast, the plaintiff in this case attempts to use the

later filing of a § 1983 action to forestall an invocation of the exhaustion doctrine against an independent injunctive claim that he had previously filed. See also *James* v. *Jennings,* 735 S.W.2d 188, 190 (Mo. App. 1987) (a § 1983 action filed in state court does not take jurisdiction away from state administrative agency). We find that the filing of this § 1983 count does not permit the plaintiff to avoid the exhaustion doctrine.

## III

Our conclusion above that there are no constitutional infirmities in the due process rights granted to the plaintiff worthy of an exception to the exhaustion doctrine does not preclude a grant of injunctive relief on some other ground that might arise. *West* v. *Bergland,* 611 F.2d 710, 718 (8th Cir. 1979); *Bakersfield City School District of Kern County* v. *Boyer,* 610 F.2d 621, 626 (9th Cir. 1979); *Darien* v. *Stamford,* 135 Conn. 71, 77, 60 A.2d 764 (1948); see *Renegotiation Board* v. *Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S. Ct. 1028, 39 L. Ed. 2d 123 (1974). Any grant of injunctive relief, however, would be extraordinary and the circumstances of this case certainly do not justify such action at this time. The issuance of an injunction "rests in the sound discretion of the trial court." *Berin* v. *Olson,* 183 Conn. 337, 340, 439 A.2d 357 (1981). "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 476, 391 A.2d 137 (1978). "Absent a showing of immediate and irreparable harm, a party who is aggrieved by a decision of an administrative agency may not institute an independent action for the purpose of bypassing the UAPA appeal process." *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 98, 448 A.2d 210 (1982). We conclude that the trial court erred in finding that the plaintiff had sustained his burden on both requirements.

The most obvious reason that injunctive relief is not warranted is that the plaintiff has an adequate remedy at law. The case before the board involves a disciplinary action and possible loss of a license to practice medicine against a physician who has allegedly inappropriately treated his patients. Obviously, the remedy that the plaintiff desires is a finding that he has committed no wrongdoing and is capable to practice medicine. This remedy is precisely what the board is empowered to provide. This court has permitted interruption of administrative remedies in circumstances where the agency is incapable of providing an adequate remedy. See, e.g., *Dukes* v. *Durante,* 192 Conn. 207, 223–24, 471 A.2d 1368 (1984); *Cahill* v. *Board of Education,* 187 Conn. 94, 444 A.2d 907 (1982). The remedy offered by the defendant board, however, is adequate and there is no need for injunctive relief.

The sole case cited by the plaintiff to support his claim that the trial court properly concluded that he had no adequate remedy at law is *Plano* v. *Baker,* 504 F.2d 595 (2d Cir. 1974). In his brief, he cites *Plano* after contending that "[w]here a dispute is largely factual, an administrative remedy that expressly forbids the examination and cross-examination of witnesses is inadequate as a matter of law . . . ." *Plano* is distinguishable both on the facts and on the law. In *Plano,* the Court of Appeals for the Second Circuit reversed the District Court's dismissal of the petitioner's § 1983 civil rights action because of his failure to exhaust his administrative remedies. In that case, the petitioner, a probationary teacher, was discharged *without notice or hearing* because he had given his pupils a controversial homework assignment on the subject of teenage attitudes toward premarital sex. The board that discharged him did not conduct a factfinding hearing and nowhere in the administrative process that the District Court required him to exhaust was there any proce-

dure to resolve factual issues. Moreover, the regulations governing appeals to the New York commissioner of education made oral argument discretionary and expressly prohibited the taking of testimony. Id., 598. The *Plano* court did say that "[w]here a dispute is largely factual, we fail to see how an administrative remedy that expressly forbids the examination and cross-examination of witnesses can be considered adequate for purposes of the exhaustion rule." Id. It then observed that it had previously described a hearing before the commissioner of education as "no more than an informal roundtable discussion between the Commissioner, the parties and their attorneys." *James* v. *Board of Education*, 461 F.2d 566, 569 (2d Cir.), cert. denied, 409 U.S. 1042, 93 S. Ct. 529, 34 L. Ed. 2d 491 (1972); *Plano* v. *Baker*, supra, 598 n.5. Another factor leading the *Plano* court to hold the administrative remedy inadequate was that the constitutional issues raised, particularly in the area of the first amendment, were within the expertise of courts and not of administrators. In that regard, the court observed that because the administrator did not have "an adequate procedure for finding facts," the case presented "little opportunity for the administrator to put his expertise to work in a manner that will be useful to a reviewing court." *Plano* v. *Baker*, supra, 599. These circumstances make evident how inapposite *Plano* is from the case before us.

The plaintiff offered considerable evidence that he claims demonstrates that he has suffered irreparable injury and the trial court agreed. The plaintiff claims that he is subject to being disqualified from a prepaid health insurance program; his malpractice insurance was not renewed for a time and it took a lengthy resubmission and reconsideration process to do so; his name was excluded from a referral list of physicians; his practice has suffered a decrease in referrals from other physicians and a decrease in new patients. The plaintiff

contends that the negative impact on his practice will continue until the pending charges are resolved and that this calls for injunctive relief.

We do not disagree that the plaintiff's current practice may have been "damaged" by these proceedings. The plaintiff, however, complains in great measure about injuries that are the indirect result of the initiation of the action itself. The reaction of former and prospective patients, insurance carriers, other physicians and the general public, although unfortunate since only charges have been made, is not of the defendants' doing and yet the defendants are the target of the injunctive orders of the trial court. It is possible that a hearing that has dragged on without resolution because of inexcusable actions by the defendants could rise to the level of irreparable injury currently claimed by the plaintiff. This is not such a case. The administrative framework was not designed for instant resolution despite the foreseeability of physicians suffering temporary problems due to the pendency of serious charges against them. It was reasonably foreseeable that a board made up of unpaid physicians would not be able largely to neglect their own practices and hold a continuous hearing desired by the plaintiff. The defendant board attempted to ameliorate these circumstances by its willingness to hold hearings over the weekends to expedite matters. It was the plaintiff, not the defendants, who was responsible for the fact that only two hearing days were held in five months. The trial court's finding that the plaintiff is suffering irreparable injury is clearly erroneous; Practice Book § 4061; and its award of injunctive relief was error.

There is error, the judgment is set aside and the matter is remanded to the trial court with direction to dismiss the case for lack of jurisdiction because of the plaintiff's failure to exhaust administrative remedies.

In this opinion the other justices concurred.