OFFICE OF CONSUMER COUNSEL *v.* DEPARTMENT OF PUBLIC UTILITY CONTROL ET AL.

Superior Court             Judicial District of             File No. 528093
                    Hartford-New Britain at Hartford

Memorandum filed November 21, 1994

*Connecticut consumer counsel,* for the plaintiff.

*Mark F. Kohler, Robert S. Golden, Jr., Tatiana D. Sypko,* assistant attorneys general, with whom was *Richard Blumenthal,* attorney general, for the named defendant.

*Cynthia Broadhead* and *Phyllis E. Lemell,* for the defendant Connecticut Light and Power Company.

No appearance for the defendants Northeast Utilities Company and the United Illuminating Company.

MALONEY, J. The plaintiff, the state office of consumer counsel, is appealing a decision of the defendant department of public utility control (department) concerning a power outage at the Millstone 3 nuclear power generating facility, which is owned and operated by the defendant Connecticut Light and Power Company and its affiliates (company). The plaintiff is a state agency, and its appeal is authorized under General Statutes §§ 16-2a and 4-183. The court finds in favor of the plaintiff.

On July 15, 1991, the company was forced to shut down its Millstone 3 nuclear power plant after it discovered that the plant's water supply system had become inoperable. The cause was determined to be an infestation of mussels in a water intake pipe, which prevented sufficient water from reaching the plant's cooling system. The shutdown lasted sixty-nine days while necessary repairs were made.

In accordance with General Statutes § 16-8, the department retained an independent consultant to investigate the incident and to render a report. Upon receipt of the report, the department issued notice that a public hearing would be held. The plaintiff retained its own outside consultant and participated in the proceedings as a party.

Prior to the commencement of the hearing, the plaintiff served the company with interrogatories. Two interrogatories requested that the company provide certain documents as follows: "8 (b) Provide copies of the minutes, notes, transcriptions, reports, and/or summaries of all meetings of the corporate Nuclear Safety Engineering Group (NSEG) held since December 1, 1983 at which the Millstone 3 service water system was discussed or addressed; 8 (c) Provide copies of all studies, reports, analyses, evaluations and/or critiques prepared by or for the corporate Nuclear Safety Engineering Group (NSEG) held since December 1, 1983 which addressed the Millstone 3 service water system."

The company's nuclear safety engineering group (group) referenced in the plaintiff's interrogatories, is a committee of employees established by the company to comply with requirements of the federal Nuclear Regulatory Commission, which require companies operating nuclear power plants to establish internal committees or groups to study and to make critical evaluations of the operation of the plants from the standpoint of public health and safety. Although composed of employees, such groups are independent of the normal corporate chain of command, reporting their critiques directly to senior management.

The company refused to comply with the plaintiff's interrogatories, claiming that the group's reports are protected by a privilege against disclosure of "self-critical analysis." The plaintiff moved to compel production.

On August 20, 1992, the department granted the plaintiff's motion to compel, subject to the company's right subsequently to object to the admission of the documents into the record. On September 11, 1992, after examining the documents in camera, the department vacated its earlier ruling and denied the plaintiff's motion to compel production. This ruling by the department presents a primary issue in the plaintiff's appeal.

The public hearing was held on September 11 and December 11, 1992. The parties presented copious evidence and testimony, including the reports of the expert consultants retained by the plaintiff and the department.

Following the hearing, on May 26, 1993, the department rendered its decision. Subsequently, on July 13, 1993, the department rendered a ruling on the plaintiff's petition for reconsideration, which essentially incorporated the findings and conclusions of the May decision, but with further articulation of the issues raised by the plaintiff in its petition. The court considers the May decision and the July ruling together as constituting the department's final decision for purposes of this appeal. See General Statutes § 4-166.

In its decision, including its ruling on the petition for reconsideration, the department made findings of fact and conclusions of law, which may be summarized as follows: (1) The precipitating cause of the plant shutdown was the accumulation of mussel debris in an eighty foot pipe carrying water to the plant's heat exchangers; (2) The cost of removing the mussels, relocating a preventative chemical injection system, and replacing the power needed during the period of the shutdown totaled $1,245,000; (3) The company had known about the mussel fouling problem prior to the shutdown and had taken steps to prevent it; (4) The company's "activities associated with the entire mussel

fouling problem appear to be both reasonable and appropriate in the context of engineering practice in general use at the time," and, therefore, its actions were not imprudent.

On the basis of its finding that the company had not acted imprudently in its efforts to control the mussel fouling problem, the department declined to order, as the plaintiff had urged, that the expenses of the clean up and replacement power be refunded to the ratepayers. The department also affirmed and elaborated on its earlier ruling that the "self-critical analysis" documents, which the plaintiff had sought to examine by way of the prehearing interrogatories, were privileged.

After the plaintiff filed this appeal, the company filed with the court, under seal, the documents that are the subject of the disputed interrogatories and that had already been examined by the department in camera. The court has examined those documents. They consist of reports by the company's group regarding the operations of the Millstone 3 plant during the years prior and subsequent to the plant shutdown. The reports are, in part, critical of those operations. The reports are also clearly relevant to the issue of the prudence of the company's actions in controlling mussel debris in the water pipes.

The plaintiff raises essentially two general issues as the bases of its appeal: (1) that the department's refusal to compel the company to produce the "self-critical analysis" documents for the plaintiff's prehearing examination was based on errors of law and was an abuse of discretion; and (2) that the department's findings and conclusions with respect to the prudence of the company's actions in controlling the mussel problem were based on insufficient evidence or were contrary to the evidence. The resolution of the first issue is dispositive of this appeal.

The extent to which a party to an administrative proceeding is entitled to pretrial discovery was considered by the Supreme Court in *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 542 A.2d 672 (1988) (*Pet I*). "Pretrial discovery may be expressly authorized by statute, but, absent an express provision, the extent to which a party to an administrative proceeding is entitled to discovery is determined by the rules of the particular agency." Id., 357.[1]

Subsequent to the Supreme Court's decision in *Pet I*, the legislature amended the Uniform Administrative Procedure Act (UAPA) by adding General Statutes § 4-177c, effective July 1, 1989. Public Acts 1988, No. 88-317. That statute does provide a right of pretrial discovery with respect to documents. Section 4-177c provides in part: "In a contested case, each party and the agency conducting the proceeding shall be afforded the opportunity (1) to inspect and copy relevant and material records, papers and documents not in the possession of the party or such agency, except as otherwise provided by federal law or any other provision of the general statutes . . . ." This statute would seem to supersede any conflicting rule of an administrative agency.

The parties have not cited any formal rules of the department relating to prehearing discovery. The department has apparently adopted a general position on the subject, however, that is in accord with the statutory mandate. In its ruling dated August 20, 1992, the department stated its position as follows: "The department adheres to the concept that effective discovery serves to advance the efficiency of administrative hearings and provides the important fact-finding

---

[1] In a later decision involving the same parties; *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 638 A.2d 6 (1994) (*Pet II*); the court again noted that rule, but did not need to apply it, finding instead that the plaintiff had not even shown that he had been denied access to the information he sought.

base upon which administrative decisions may rely. Accordingly, the department and other parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in a pending proceeding. Further, it is not grounds for objection that the information or documents sought through discovery will be inadmissible at the hearing if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

In summary, the applicable statute and the department's general rule would require the company to produce the documents in question provided they are relevant to the issues before the department and are not privileged. Neither the company nor the department asserts that the contents of the documents are irrelevant. The sole basis of the department's ruling that the documents are not discoverable by the plaintiff is that the documents are protected by a qualified common-law privilege. The department invoked the privilege in this case only after weighing public policy considerations. In order for that ruling to be sustained, therefore, the court must find (1) that such a privilege exists or should exist in Connecticut, and (2) that the privilege should be enforced against the plaintiff, the state office of consumer counsel, to prevent its prehearing examination of the documents.

The parties have not cited any Connecticut statute or case law establishing a privilege barring discovery of self-critical documents compiled by a public utility in the course of its business. In *United States* v. *Dexter Corp.*, 132 F.R.D. 8 (D. Conn. 1990), however, the court noted that federal courts have recognized a qualified privilege when the public interest in preserving confidentiality outweighs the benefits of pretrial discovery of evidence. Such public interest may be found, the

court observed, when disclosure of self-critical documents might have a "chilling effect" on the organization's future evaluations of its actions affecting health, safety or other public concerns. Id., 9. In that particular case, however, the court held that since the parties seeking discovery were themselves public agencies (the federal and state environmental protection agencies), the public interest factor was neutralized. The court declined, therefore, to allow the defendant corporation to invoke the privilege. Id., 10.

In its decision in the present case, the department found that there is a strong public interest in encouraging nuclear power companies to perform continuing self-critical evaluations of their operations. It further found that disclosure of those evaluations "would have a chilling effect on the thoroughness and candor" with which the company might undertake them. This, the department reasoned, would harm the goal of safe nuclear power operations.

The department also noted that the use of a company's self-critical documents would be limited at best because the company usually arrives at its conclusions only after the event, and "hindsight review has never been appropriate in an economic regulation setting." In support of this theory, the department cited a Nuclear Regulatory Commission policy statement to the effect that modification of a company's procedure after an "incident" should not be grounds for disallowing costs of the breakdown to be recouped from the ratepayers. Such a result, the commission stated, would create a "strong disincentive" to safety improvements.

From the factors and reasoning summarized above the department concluded that the public interest required that the company's self-critical documents relating to Millstone 3 be shielded from discovery by the plaintiff office of consumer counsel.

Although the department's reasoning might be persuasive in other cases involving other parties, it may not be sustained here. First, the legislature expresses the public policy of the state in the General Statutes. The courts and administrative agencies, by contrast, have more limited roles in the formulation of policy. "Where there is no ambiguity in the legislative commandment, this court cannot, in the interest of public policy, engraft amendments onto the statutory language." *Burnham* v. *Administrator, Unemployment Compensation Act*, 184 Conn. 317, 325, 439 A.2d 1008 (1981). Nor is it the prerogative of an administrative agency to do so. *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 181, 550 A.2d 8 (1988).

As noted earlier, § 4-177c unambiguously requires parties and agencies in administrative proceedings to provide other parties to the proceedings access to relevant documents. In addition, the statutes governing the activities of the plaintiff indicate a legislative intent, that is, a public policy, that that office have full access to information relevant to department proceedings in which the consumer counsel is involved. Section 16-2a (b) provides that "the Office of Consumer Counsel shall have access to the records of . . . the department of public utility control, shall be entitled to call upon the assistance of . . . the department's experts, and shall have the benefit of all other facilities or information of . . . the department in carrying out the duties of the Office of Consumer Counsel . . . ." The public policy of this state, therefore, as expressly enunciated by the legislature, strongly favors prehearing discovery of relevant documents by the plaintiff.

The unique nature of the plaintiff's role in this case is also a factor in balancing the public interests at stake. The office of consumer counsel is a state governmental agency. Section 16-2a (c) provides that the consumer counsel, appointed by the governor, shall be a person

who "shall have demonstrated a strong commitment and involvement in efforts to safeguard the rights of the public." Subsection (a) of § 16-2a provides that the duty of the office of consumer counsel is "to act as the advocate for consumer interests in all matters which may affect Connecticut consumers with respect to public service companies . . . ." The plaintiff is a public agency, in short, that has its own statutory charge to protect the public interest. To the extent that the enforcement of the "self-critical" privilege interferes with the discharge of the plaintiff's duties, therefore, it would tend to harm rather than to promote the public interest. See *United States* v. *Dexter Corp.*, supra, 132 F.R.D. 10; see also *Federal Trade Commission* v. *TRW, Inc.*, 628 F.2d 207 (D.C. Cir. 1980). The department did not give adequate weight to this factor when it determined that the public interest prohibited the plaintiff from examining the company's documents.

Without minimizing the public policy reasons for encouraging nuclear power companies to perform effective self-critical evaluations, there are also strong public policy reasons that support discovery of evidence in administrative proceedings, especially in the field of nuclear power regulation. The department itself recognizes the truth-seeking benefits of prehearing discovery, as indicated in its original ruling on the issue in the present case, quoted earlier. In *Kansas Gas & Electric* v. *Eye*, 246 Kan. 419, 427, 789 P.2d 1161 (1990), cited by the plaintiff, the court observed: "It is generally recognized that the maintenance of confidential communications is an important aspect of self-critical analysis and whistle-blower programs. Nevertheless, we believe the public has an overriding interest in the dissemination of information related to costs, construction, and safety practices of nuclear power plants. The Three Mile Island and Chernobyl accidents illustrate the potential public hazard contained in each nuclear

plant." There exists a strong public policy in favor of full disclosure of documents in regulatory commission proceedings so that the commission and parties can have the broadest possible range of evidence before them in reaching conclusions especially, as here, where the concern is with a nuclear power plant operator's prudence.

Aside from the public policy issues, the department's decision was based on its theory that "hindsight" should not be used to analyze the prudence of a utility's actions leading up to a power failure, at least in the context of a proceeding to determine whether the utility's rates should be adjusted. The Supreme Court has endorsed that concept in general terms. "The prudence of a management decision depends on good faith and reasonableness, *judged at the time the decision is made.*" (Emphasis added.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 645, 583 A.2d 906 (1990). In its decision, the department reiterated that concept in defining the standard of prudence that the law imposes  on the company. "[T]he actions or omissions of a utility with respect to the operation and management of a nuclear power plant will be measured against those of a reasonably prudent nuclear power plant operator on the basis of facts which were known or which should reasonably have been known by the utility at the time of the actions or omissions."

The hindsight rule is clearly applicable in a case where a power company acted on the basis of state-of-the-art information and it is later determined that those actions were, nevertheless, inadequate. The rule has less justification, if any, however, in a case where the company actually knew what the prudent course of action was, but refused or neglected to take it. In such a case, a finding of imprudence would not be based unfairly on hindsight, but rather on the fact that the

company failed to do what it knew was required at the time.

The plaintiff's major allegation of imprudence in the present case, as summarized in the department's decision, is that "the shutdown was caused by the failure of the company's management to address a *known* design deficiency. That is, it failed to move the plant's sodium hypochlorite injection point in 1985, or subsequently, in order to provide protection for the entire Millstone 3 Service Water System." (Emphasis added.) Such a claim is not based on hindsight. It is not a claim that is proved primarily by subsequent events. Rather, it is a claim that the company was aware of the prudent course of action at the time, but refused or neglected to follow it.

The court has reviewed the documents in question with specific attention to the applicability of the rule concerning hindsight. The documents are highly relevant to the plaintiff's claim that, long prior to the shutdown, the company ignored what it knew to be a prudent course of action for controlling the mussel fouling problem. Accordingly, the court concludes that the department's reliance on the hindsight rule in barring the documents from discovery by the plaintiff was not justified.

It should be noted that the department does not rely on precedent established by any of its prior practices or rulings. Indeed, in two cases cited by the plaintiff in its brief, the department and the plaintiff received copies of the company's group reports relating to incidents at the Millstone 2 plant. Furthermore, the plaintiff points to the fact that the department's counterpart in Massachusetts, that state's department of public utilities, granted discovery of the same documents in a related investigation in that state. While the Massachusetts department's ruling is, of course, not binding on the

Connecticut department, it does provide compelling arguments in support of the plaintiff's position.

Finally, many, if not all of the concerns of the department and the company would be rendered inconsequential if the discovery were permitted subject to an order by the department that the plaintiff maintain the confidentiality of the documents. The plaintiff states that it has always been agreeable to such a procedure and that it would comply with such an order in this instance as it has done in other cases.

For all of the foregoing reasons, the court finds that the department's decision denying the plaintiff's discovery of the company's documents violated the plaintiff's rights under § 4-177c and was an abuse of the department's discretion. These errors are not excused by General Statutes § 4-178 (2), cited by the department and the company in their briefs. That statute requires agencies to give effect to rules of privilege "recognized by law" in receiving evidence. Even if that statute applies to prehearing discovery requests, the court holds that Connecticut law does not recognize the qualified privilege against discovery of "self-critical" analysis under the circumstances of the present case.

The defendants' final argument is that even if the plaintiff was wrongfully deprived of the opportunity to obtain the company's documents, it was not prejudiced as a result. This argument is based on the thought that there is other evidence already in the record that sufficiently supports the plaintiff's contentions. The argument misses the point. As the department itself pointed out in its original ruling on the issue, it is not grounds for objection that a document sought in discovery proceedings will be inadmissible for some reason, such as redundancy, at the administrative hearing. The importance of discovery from the plaintiff's standpoint is that it provides an opportunity to develop evidence that is

relevant and material to the precise allegation of fault that the plaintiff is attempting to prove. The evidence is potentially all the more powerful because it may be in the form of statements and admissions of an adverse party. Depriving the plaintiff of the opportunity even to explore this source would significantly prejudice it in the preparation of its case.

The plaintiff's appeal is sustained and the case is remanded to the department for further proceedings. Under § 4-183 (k), the department is ordered to reopen the hearing and to grant the plaintiff's motion to compel discovery of the documents specified in its interrogatories 8 (b) and 8 (c). The department may impose the condition that the plaintiff maintain the confidentiality of the documents unless and until the department admits them as evidence in the record. The plaintiff shall have the right to offer the documents or other evidence or testimony related to them as additional evidence for the record, and if the department admits such evidence, the company shall have the right to offer additional evidence in rebuttal. If the department admits additional evidence offered by any party, the department shall render a new decision, which may affirm, modify or reverse its original decision.