[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter commenced by complaint dated August 19, 1988. The plaintiffs are Gloria Palmieri and Dolores Penque. The defendant, George Tsolis, filed an answer, special defenses to the plaintiffs' complaint and a counterclaim on May 24, 1990. On June 19, 1990 the plaintiffs filed a reply to the defendant's special defenses and an answer to his counterclaim.
The plaintiffs live at 15 Navarro Road, East Haven, Connecticut, and the defendant lives in the next house, at 17 Navarro Road, East Haven, Connecticut. The defendant has lived at that address for the past thirty-six (36) years and the plaintiffs at their address since 1974. Ms. Penque is a tenant of Ms. Palmieri who owns the property at 15 Navarro Road. The defendant owns the property at 17 Navarro Road with his wife, Netti Tsolis, and they both live there.
In 1983 these parties were involved in another lawsuit in this court (#CV-83-0221158-S), which resulted in an agreement being reached by the parties. (Exhibit A). As a result of that agreement the parties were not to harass or annoy each other. Also, the defendant was to pay the cost of a survey of the property line between both properties and the cost to erect a six (6) foot fence along said line. In the fall of 1987 Lawrence W. Fisher, a surveyor, was contacted by the defendant's attorney relative to surveying the aforesaid property line. Mr. Fisher's company, LWF Land Surveyors, subsequently did survey and stake out the subject property line. Mr. Fisher testified that on two CT Page 7527 occasions the plaintiff Ms. Palmieri called his office to complain about his work crew. He stated she was loud and unpleasant on the phone and that while his crew was staking the line that was to be surveyed, she tried to interfere. Mr. Fisher testified that Ms. Palmieri complained that a survey should not be done in the neighborhood because it was dangerous to children Ms. Palmieri denied she made such a complaint. While at the site Ms. Palmieri complained that Mr. Fisher's truck was distracting her dogs and she wanted him to move it. He testified he did not move said truck.
This trial covered parts of three days, July 20th, July 21st and July 22, 1992. On the first day of trial the court with both attorneys viewed the subject premises. While at the site someone was cutting the defendant's grass. In addition, the court saw three rather large dogs in the plaintiffs' yard, two of which were tied and a third was in a dog pen. The court could also hear a fourth dog barking from inside the house. Ms. Palmieri testified she owned three doberman dogs and a poodle.
The plaintiffs both testified that since the agreement was signed (Exhibit A), the defendant has continued to harass and annoy them. The agreement is dated May 28, 1987, and was signed by the defendant on October 22, 1987 and his son Gregory Tsolis, who is not a party to this action, on June 23, 1987. The plaintiffs signed the agreement on May 3, 1988.
Ms. Palmieri testified that the defendant came on her property on June 19, 1987 and trimmed all her trees. (See Exhibit C). She also stated that between June 20 and June 30, 1987, the defendant removed boulders from her property to his property. The defendant testified that the boulders she was referring to were his and he placed them on his property six (6) to eight (8) feet from the property line so that they could be taken away, which was done in 1984. Ms. Palmieri also testified that on many occasions since May 28, 1987, the defendant and his grandchildren, at his command, came onto her property and teased her dogs by poking a rake or shovel through the dog pen fence. She also claimed that in July 1987 the defendant sprayed her dog pen with water. Ms. Palmieri claimed that in September 1987 the defendant had a defective furnace which let off black smoke and soot which came into the plaintiff' home. Ms. Palmieri stated that she had to call the Board of Health about this and that it finally stopped after many months. Mrs. Tsolis testified that while she and her husband were in Florida on vacation in 1986, there was a soot problem with the furnace which was taken care of by their son who checked their house every day for them.
The plaintiffs also testified that the defendant sprayed insecticide on his trees and that the insecticide came onto their CT Page 7528 property and was a health hazard to them and their dogs. The defendant stated that he had two apple trees which he sprayed for two years. One tree was cut down before May 28, 1987 and the other was cut down around that time according to his testimony.
Ms. Palmieri stated that the defendant injured her dog, Brutus', leg in March 1990. She said it appeared that the injury was caused by a BB pellet. However, neither plaintiff saw the defendant actually injure the dog. According to Ms. Palmieri that dog was poisoned and died in March 1990. She also said that the defendant had a garden in his yard and watered it day and night with the water continuously going onto her shed. As a result of this watering, she testified that her shed's roof and sides became rotted. She is claiming $1600.00 damages to this shed as a result of said watering. (Exhibit I). The plaintiffs both claim that the defendant spread grass seed and grass cuttings on their crushed stone driveway which caused grass to cover said driveway, all to their damage. In fact, Ms. Penque stated that she could not park her car on said driveway because the grass was so high it would cause her car to blow up. However, she provided no evidence to the court to substantiate that claim. Ms. Palmieri claimed she put weed killer (Ortho) on said driveway and her oil man spread oil on the driveway to prevent the grass from growing but this did not solve the problem. Ms. Palmieri testified she had a 1987 estimate of $890.00 for crushed stone to repair said driveway as a result of the damage she claims the defendant caused by spreading grass seed and grass cuttings on it.
Ms. Palmieri stated that in the summer of 1988 she saw the defendant on her property and that when he saw her he ran or scurried away. Mrs. Tsolis testified that her husband, the defendant, was hospitalized twice that summer.
Both plaintiffs testified that on Saturday, July 18, 1992, the defendant was on their property when he was mowing his lawn. The defendant denied he was on the plaintiffs' property on that date or any date that the plaintiffs allege. When the court mentioned that on Monday, July 20, 1992, the court observed a workman mowing the defendant's lawn, Ms. Palmieri said that that was not unusual. She stated he always cuts the grass after the grass service does the same. Ms. Penque that stated the defendant sometimes cuts the grass everyday.
The plaintiffs also complained that the defendant's lawnmower smoked and caused damage to their property and health Mrs. Tsolis and the defendant testified that on October 18, 1987, the defendant overfilled the oil in his lawnmower causing it to smoke. Mrs. Tsolis stated that the plaintiffs called the fire department who came to the defendant's home and that since that CT Page 7529 date the defendant has not cut his or anyone else's grass. The defendant is legally blind according to his testimony with only forty (40%) per cent sight in one eye. He has had an eye implant.
The plaintiffs also claim that they never were notified when the survey and fence construction would take place as per the terms of the aforementioned agreement. However, the plaintiffs then attorney, on August 26, 1988, sent a letter to the defendant's attorney which set out an agreement concerning the installation of said fence. (Exhibit 2). The plaintiff, Ms. Palmieri, denies that she ever received a copy of said letter, although the letter shows a copy was sent to her.
In addition to the aforementioned damages, the plaintiffs seek $1950.00 in attorneys' fees and further damages of $1325 to replace bushes and shrubs Ms. Palmieri claims were removed by the defendant from her property. (Exhibit H). Ms. Palmieri also claims that the subject fence leans toward her property and that this condition should be corrected.
In their complaint the plaintiffs seek a permanent injunction enjoining the defendant from trespassing on their property and from invading their privacy. They also seek money damages and punitive damages.
The defendant, George Tsolis, is a great-grandfather who has lived at 17 Navarro Road for thirty-six years. He has several physical infirmities. He has no hip on one side of his body which resulted in his leg being joined to his pelvic area. Thus one leg is much shorter than the other. As stated previously he is legally blind. He has also had elbow surgery and wrist surgery in the summer of 1988 which resulted in the aforementioned two hospitalizations that year. The defendant testified that he cannot use his back yard because of the actions of the plaintiffs. He testified that the plaintiffs talk like truck drivers. Mrs. Tsolis stated that they have not had a picnic in their back yard for ten years because of the plaintiffs' actions. Mrs. Tsolis also testified that her husband has not cut the grass since October 1987 when the fire department came to their house. She said that the defendant did not order a survey immediately after the previous settlement was reached because the plaintiffs had not yet signed the agreement. Eventually the defendant had the survey done before the agreement was signed by the plaintiffs. She testified that the fence was not constructed until the fall of 1988 because the defendant was in the hospital two times in the summer of that year.
The defendant testified that the plaintiffs' actions have made him a nervous wreck and made his wife sick. He stated every CT Page 7530 time he or his wife open their back door and go out into their yard or his wife hangs clothes, the plaintiffs' dogs continuously bark. He stated he would sell his house and take a loss just to get out of this situation. The defendant seeks payment from the plaintiffs of his attorney's fees of $2200.00, and further money damages for medical bills and money damages for harassment and aggravation. The defendant also seeks a permanent injunction against the plaintiffs.
The defendant testified that a few weeks ago as he was or his property viewing the fence that separates the properties, Ms. Palmieri said if I catch you on my property I will knock the (expletive) out of you. He stated that when the plaintiffs received the notice of this trial, Ms. Palmieri yelled ethnic obscenities at him from her house and threatened to burn his house down. The court found the testimony of the defendant to be very credible on all issues.
The law imposes upon every property owner a duty to make reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor. The determination of reasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests. Page Motor Co. v. Baker, 182 Conn. 484, 497.
A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. Pet v. Department of Health Services, 207 Conn. 346, 370.
After hearing the evidence the court finds the issues for the defendants on all counts of the plaintiffs' complaint as the plaintiffs did not sustain their burden of proof thereon.
As to the defendant's counterclaim, the court finds the issues for the plaintiffs on the second, third and fourth counts as the defendant has not sustained his burden of proof thereon. As to the first count, the court finds the issues for the defendant in that the plaintiffs' actions have created a private nuisance and interferred with the defendants' use and enjoyment of his property. He should be allowed to enjoy the peace an quiet of his property without disturbances from the plaintiffs. The court awards the defendant $1000.00 in damages as against both plaintiffs as a result of their actions toward the defendant. Both plaintiffs shall be jointly and severally liable for said sum. The court also awards the defendant costs of suit.
The court does not grant the plaintiffs' request for a permanent injunction as the evidence does not merit the granting of such an injunction. The court does grant the defendant's request for a permanent injunction and enjoins the plaintiffs CT Page 7531 from interferring with the defendant's enjoyable use of his own property. The plaintiffs shall not allow their dogs to bark excessively when the defendant or his family are in their yard nor shall they become loud and boisterous toward the defendant or any members of his family.
Both parties have requested attorneys' fees. However, the court does not award attorneys' fees to either party since the court has no authority to do so in this case. Attorneys' fees can only be awarded when there is statutory authority or a written agreement authorizing them. There is neither in this case.
As to the agreement dated May 28, 1987 and previously signed by the parties (after that date) all the terms thereof that remain in effect today and that do not conflict with the terms of this memorandum shall continue to remain in full force and effect.
Judgment may enter accordingly.
WILLIAM J. SULLIVAN, JUDGE