[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION
This case is before the court on an application for a temporary injunction. The applicant, Saturn Construction Company, Inc. is seeking to enjoin a pending demand for arbitration filed by the defendant, U.S. Concrete Systems Corp. on the ground that there is no written agreement to arbitrate. A hearing was held on October 9, 1991 before the court.
The relevant facts are not in dispute. The Saturn Construction Company ("Saturn"), a general contractor, entered into a contract with the State of Connecticut, acting through CT Page 7 the Department of Public Works, for the construction of the concrete foundation and building "shell" portion of a project known as the Western Connecticut Correctional facility. On August 1, 1990, Saturn, acting through its vice president, William Burns, engaged U.S. Connecticut Systems Corp. ("U.S. Concrete") as a subcontractor by transmitting to U.S. Concrete a purchase order for the supply of precast concrete panels. The purchase order contains twenty-six numbered contract term, a "Hold harmless clause," and a schedule of insurance requirements. Paragraph 26(B) of this document contains the following term, the interpretation or which is at issue:
 This firm is responsible to Saturn Construction Co. in the same manner and requirements as Saturn is responsible to the Owner and Architect.
Also at issue is paragraph 11 of the Notice to Bidders sent by the state and executed by Saturn. This clause states that any dispute arising out of the contract "shall be submitted to arbitration under the rules of the American Arbitration Association."
On August 28, 1990, U.S. Concrete, acting through its president, Nancy N. Sarda, executed and returned the purchase order to Saturn. The returned purchase order contains some minor modifications of the terms of the original purchase order, a five-page letter "summarizing" the agreement and adding additional terms, and a provision stating that. "[a]ny conflict whatsoever shall be governed and/or superseded by the provisions of this letter." The instant dispute does not concern any conflict between the terms of the two document.
On September 10, 1990, Saturn, again acting through Burns, responded to the returned purchase order by stating that "I have no problem with your minor quotation corrections." but objecting that "the final note [containing the provision that conflicts shall be governed by the purchase order returned by U.S. Concrete and its accompanying letter] is totally unacceptable and will not be acknowledged by this Company as a part of this Purchase Order. By letter dated September 17, 1990, Sarda responded by stating that the payment terms were non-negotiable and that U.S. Concrete would not continue work if its payment terms were not accepted.
Despite the conflicting memoranda, the parties commenced performance. During the course of the project, disputes arose over the quality of the panels delivered by U.S. Concrete and the terms of payment. By letter dated October 30, 1990, Luca Cappelli, Jr., Chairman of the Board of Saturn, terminated the CT Page 8 purchase order, ordered that no further work be done, and stopped a previously tendered payment check.
On January 28, 1991, U.S. Concrete initiated abritration proceedings before the American Arbitration Association ("AAA") in Hartford, Connecticut. From the record, it appears that the parties participated in the proceedings only to the point of selecting an arbitrator. Thereafter, on April 8, 1991, Saturn notified the AAA and counsel for U.S. Concrete by letter that it would not continue to participate in the arbitration proceedings, stating that it had never agreed to arbitrate disputes with U.S. Concrete.
Subsequently, on July 13, 1991, Saturn filed an Application for Temporary injunction and Order to Show Cause with the Superior Court for the Judicial District of Hartford/New Britain at Hartford.
A. Parties' Arguments
The plaintiff argues that it is entitled to a temporary injunction enjoining the defendant from proceeding with the above-described claim for arbitration before the AAA because; 1) arbitration can be compelled only by contract, and there exists no valid written agreement; 2) if there exists a valid written agreement, this agreement does not include a valid arbitration clause; and 3) the plaintiff by its limited appearance in the arbitration proceedings, did not waive its right to contest arbitrability. The defendant challenges each of these assertions, arguing that; 1) a valid and enforceable contract exists; 2) the terms of the contract include an agreement to arbitrate disputes; and 3) that, in any event, the plaintiff has waived its right to contest arbitrability.
B. Legal Analysis
1. The Application for Temporary Injunction.
The Superior Court has jurisdiction to hear claims for injunctive relief, see General Statutes 52-471, the issuance of which always rests in the sound discretion of the trial court. Pet v. Department of Health Services, 207 Conn. 346,370, 542 A.2d 672 (1988). A party seeking injunctive relief has the burden of alleging and proving irreparable harm and the lack of an adequate remedy at law. Id., 370. In addition, a party seeking a temporary injunction must "show a reasonable degree of probability of success before a temporary injunction. . . may be granted." Griffin Hospital v. Commission on Hospitals and Health Care, 196 Conn. 451, 457, 493 A.2d 229 (1985). CT Page 9
2. The Likelihood of Success on the Merits.
It is well, settled that, under Connecticut law, only written agreements to arbitrate are valid. Bennett v. Header,208 Conn. 352, 359, 545 A.2d 553 (1988). The plaintiff argues that "the contract negotiations and the multiple exchanges of offers and counteroffers show that Saturn and U.S. Concrete never had a `meeting of the minds' sufficient to formulate a contract." Plaintiff's Memorandum at 6, citing Bridgeport Pipe Engineering Co. v. Dellatteo Construction Co., 159 Conn. 242,268 A.2d 391 (1970). The defendant argues that the parties have entered into an enforceable agreement under 2-207 of the Uniform Commercial Code. General Statutes 42a-2-207.
 a) The Existence of a Written Agreement Article 2 of the U.C.C. applies to "transactions in goods."
General Statutes 42-2-102. The instant case involves the provision of raw materials by the defendant for incorporation by the plaintiff into its building project. Because this transaction is one in goods, this case is governed by the provisions of Article 2 of the U.C.C. General Statutes 42a-2-191 et seq., where applicable.
Section 2-204 of the U.C.C. provides that a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." General Statutes42a-2-204(1). Section 2-207 applies this concept to disputes which arise out of the presence of conflicting or additional terms in a document which purports to accept an offer. General Statutes 42a-2-207, see also comment 1. This section provides that:
 [a] definite and seasonal expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly make conditional on assent to the additional or different terms.
General Statutes 42a-2-207(1).
It is not disputed that the August 21, 1990 purchase order sent by the plaintiff was an offer to purchase concrete products from the defendant, the acceptance of which would result in the formation of an enforceable contract. The plaintiff contends that, by virtue of the defendant's inclusion of additional and CT Page 10 conflicting terms in its execution of the purchase order, there was "never a `meeting of the minds' sufficient to create a contract." Plaintiff's Memorandum of Law at 6. However, the defendant's August 28, 1990 execution of the plaintiff's purchase order is a "definite and seasonal expression of acceptance," as well as a "written confirmation. . .sent within a reasonable time" under section 2-207 of the U.C.C.
Under section 2-207 such expression of acceptance or written confirmation operates as an acceptance, notwithstanding the fact that the response is not a "mirror image" or the original, unless the expression of acceptance was "expressly made conditional on assent to the additional or different terms." General Statutes 42-2-207(1). In its execution of the purchase order, on page 8 of 8, the defendant states that "any conflict whatsoever shall be governed and/or superseded by the provisions of this letter." At issue is whether this clause constitutes an express condition of assent to additional or different terms under 2-207. The court concludes that this clause does not create an express condition of assent. First, the characterization of a proviso as an express condition or as a convenant is "to be determined with reference to the intent of the parties in light of the terminology as a whole and surrounding circumstances." Ryiz v. Federal Ins. Co., 5 Conn. App. 179, 184, 497 A.2d 1001 (1985). Because the clause in question does not use conditional language, such as "upon the express condition that . . .," "provided that . . .," or "so long as . . ." it should not be construed as an express condition. Instead, the clause appears to assume that documents create a contract which will be performed by the parties, but that if there is a conflict its terms will prevail. Second, in a letter written to the plaintiff type-dated September 17, 1990, the defendant mentions only the terms of payment as non-negotiable. These terms are not at issue here. Further, this memorandum indicates that it was not the defendant's intention to create an express condition requiring assent to all of its additional terms.
Third, the tenor, if not the literal meaning, of the offer and acceptance rules of the U.C.C. is that a contract should be found to exist where it appears from the facts that the parties intended one. See General Statutes 42a-2-204; 2-206, 2-107 (relaxing contract formalities required at common law). Here, the parties executed the very same purchase order, except that the defendant added terms which are not at issue. Finally, the framers' intent in drafting section 2-207 was to "keep the welcher in the contract." White Summers, Uniform Commercial Code 1-2 (2d ed. 1980). Here, the plaintiff is forswearing not the terms but the very existence of an agreement, a result that section 2-207 was designed to prevent. CT Page 11
Based upon the foregoing, the above-quoted clause does not create an express condition of "assent of the additional terms." Therefore, the defendant's execution of the plaintiff's purchase order operated as an acceptance, even though it states terms additional to or different from those agreed upon: the purchase order is the primary repository of the parties' agreement.
b) The Existence of a Written Agreement to Arbitrate.
Section 2-207 of the U.C.C. provides rules for the determination of the terms of a contract where an acceptance contains terms additional to or different from those contained in an offer. In this case, however, the controverted term is contained in both the offer and the acceptance, and the "pass-through" clause contained in paragraph 26(b) of both the purchase order and defendant's execution thereof is part of the contract between the plaintiff and the defendant.
This clause states that:
 This firm [U.S. Concrete] is responsible to Saturn Construction Co. in the same manner and requirements as Saturn is responsible to the Owner and Architect.
The parties appear to agree that Saturn could be required to arbitrate disputes it has with the state, either by statute, see General Statutes 4-97 and 4-126c, or by virtue of paragraph 11 of the Notice to Bidders, which states that:
 Any dispute arising out of . . . [performance under the contract] shall be submitted to arbitration under the rules of the American Arbitration Association. . . .
Saturn's position, however, is that because it is required by statute to arbitrate disputes with the state, any clause purporting to require submission of disputes to arbitration is a "nullity," and that because it arises by operation of law, the provision requiring arbitration of disputes with the state is not freely negotiated. Saturn further contends that, in order to be enforceable, an agreement to arbitrate must be freely negotiated. The defendant, relying on E F Construction Co. v. Rissel, 181 Conn. 317, 435 A.2d 343 (1980), wherein the court upheld an arbitration clause which, like the instant proviso, was incorporated by reference into the main contract, argues that the arbitration provision "passes through" to the purchase order agreement via paragraph 26(b). CT Page 12
In E F Construction v. Rissil, supra, the state supreme court interpreted a clause which, like the instant one, made the subcontractor liable to the general contractor "in the same manner" as the general contractor was liable to the owner. That case held that the general contractor's agreement to arbitrate disputes with the state extended to the subcontractor a contractual duty to submit to arbitration disputes with the general contractor, stating the "[w]here . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding the two may be interpreted together as the agreement of the parties." Id., 319, citations omitted.
The arbitration provision contained in paragraph 11 or the Notice to Bidders is a valid written agreement requiring the plaintiff to arbitrate disputes with the state. This provision was incorporated into the principal agreement between the plaintiff and the defendant by virtue of the "pass through" clause of the purchase order. Further, the plaintiff has bound itself to arbitrate its disputes with the defendant to the same extent as the plaintiff could be required to arbitrate disputes with the state. The presence of the arbitration provision in the Notice to Bidders is more than an contractual "nullity," as the plaintiff argues. Its existence is likely to provide rights additional to those that would arise solely by application of the statutes requiring submission or disputes with the state to arbitration, which could be repealed or amended by the legislature or their effect limited by application of judicial doctrine. In such case, the presence of the term in a bargained-for agreement affords some additional certainty that its provisions will be enforced. Further, breach of the covenant would give rise to an action for damages. In addition, by providing for venue in Hartford, the arbitration clause has an effect in addition to that which would arise solely by operation of law.
The pass-through clause is, itself, a part of a contract document prepared by the plaintiff and printed on the plaintiff's letterhead stationery. Generally, a contract is construed against the party who drafted it. Sturman v. Stocha,191 Conn. 1, 9, 463 A.2d 527 (1983). One rationale for this rule, applicable here, is that "since one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, that one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 513, 442 A.2d 920
(1982). If the plaintiff had wished to draft a clause in which fewer than all of its obligations to the state were to pass through to the subcontractor, then it was the plaintiff's CT Page 13 duty as the drafter of the document to articulate its terms.
Finally, the plaintiff argues that the pass-through clause pertains only to elements of performance, and not to collateral issues such as arbitration. The previously-cited rule of construction is applicable here with the result that, as the drafter of the controverted clause, it was incumbent upon the plaintiff to state its terms more precisely. Sturman v. Stocha, supra; Griswold v. Union Labor Life Ins. Co., supra. In addition, a nearly identical term was interpreted in E F Construction v. Rissil, supra, and was not found to encompass only the "performance-related" provisions of the incorporated agreement but the agreement to arbitrate as well. The "pass through" clause of the purchase order incorporates into the parties' agreement the arbitration provision contained in the Notice to Bidders; this provision provides the basis for the court to require the parties at arbitrate.
3. Conclusion.
In order to be granted a temporary injunction, the plaintiff must allege and proved, to a reasonable degree of probability, success on the merits. Griffin Hospital v. Commission on Hospitals and Health Care, supra, 457. Because the plaintiff has not met this burden, the application for a temporary injunction must be denied. Further, because the plaintiff has not proven that it has a reasonable degree on probability of success on the issue of the lack of a valid agreement to arbitrate, the issue of the plaintiff's waiver of its right to contest arbitrability need not be reached at this state of the proceeding. If the issue remains, it may be addressed at the time of a hearing on the merits.
For the foregoing reasons, the Application for Temporary Injunction is denied.
SCHALLER, J.