[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff's Lakeview Associates complaint dated July 19, 1991. The plaintiff filed an amended complaint dated January 27, 1992. The defendant, Woodlake Master Condominium Association, Inc., filed its answer dated March 25, 1992. The issue in this case concerns the maintenance and repair of a private road known as Woodlake Road, located in Woodbury, Connecticut.
The plaintiff is a general partnership with Hillard N. Einbinder and Moshe Sweky as partners The defendant is a condominium association as its name indicates. The plaintiff's property consists of approximately 79 acres of which approximately 63 acres are in Woodbury and border on Woodlake Road. The balance of the acreage is in Southbury, Connecticut, with egress and ingress to it over a right of way which is reached via Woodlake Road. At the present time, the plaintiff's property is undeveloped land. The defendant consists of 400 condominium units in 13 buildings in which approximately 1,100 residents live. According to Mr. Einbinder's testimony, this represents ten (10%) percent of the population of the Town of Woodbury. Woodlake Road runs between these two properties and is the only means of egress and ingress to these two properties Woodlake Road is approximately 6,400 feet long and 24 feet wide (Exhibit J). Originally, both properties were owned by Joseph R. Pepe. In the early 1970's, he conveyed what is now the defendant's property to Woodbury Village, Incorporated (Exhibit 2). According to the testimony of Attorney Jonathan Bowman, Woodbury Village, Incorporated was a joint venture between Joseph R. Pepe, Harold Miller, Carl Jalbert and Plasticrete Corporation. Woodbury Village, Incorporated eventually became the defendant, Woodlake Master Condominium Association, Inc. The plaintiff's purchased its property from Joseph R. Pepe, Trustee, on June 23, 1988, and June 30, 1988 (Exhibits B and C).
Joseph R. Pepe, Trustee retained ownership of Woodlake Road for himself and his beneficiaries by deed dated January 6, 1972 (Exhibit 2). Thus, his successor in title, the plaintiff, now owns the said Woodlake Road. At issue in this case is the wording and intent of the easement that Joseph R. Pepe, Trustee gave to Woodbury Village, Incorporated on October 31, 1972 (Exhibit A).
That easement states in part:
The above granted easement shall continue in full CT Page 10553 force and effect unless and until the herein described premises shall be dedicated as a public highway and accepted by the Town of Woodbury, at which time this easement shall cease and be of no further force and effect.
 Provided, however, that by the acceptance hereof, Woodbury Village, Incorporated, its successors and assigns covenant and agree that they will contribute, pro rata to maintain and keep in good repair the road described herein until acceptance thereof by such Town of Woodbury.
Under the Woodbury Zoning Regulations, the plaintiff needs access to a town of Woodbury public road in order to subdivide its property. In approximately 1990, the plaintiff asked the Town of Woodbury to accept Woodlake Road as a public road. As a result of that request, the Town had a study done relative to the road which was admitted into evidence as Exhibit H. That study stated that Woodlake Road was in generally poor condition and in need of considerable maintenance. Mr. Einbinder testified that when the plaintiff received the aforementioned Exhibit H from the Town, it demanded of the defendant that it make the required repairs to said Woodlake Road or assist the plaintiff in working out the problem with the Town. When the defendant did not do as the plaintiff requested, the plaintiff complained about the Town's school buses using an unsafe road, namely Woodlake Road, to pick up children from the defendant's condominiums. As a result, the Town school buses ceased going onto Woodlake Road to pick up the aforesaid children for a short period of time. This problem was solved when the defendant entered into an agreement with the school bus company(ies) (Exhibits I1, I2, I3, I4).
The plaintiff eventually brought suit against the defendant and now seeks an injunction requiring the defendant to maintain Woodlake Road and keep it in good repair, or alternatively an injunction prohibiting the defendant and its members from further use of the road, damages and such other legal and equitable relief as the court may deem just.
The defendant has always maintained and repaired Woodlake Road without any financial or other assistance from the plaintiff (See Town of Woodbury v. Joseph R. Pepe, Trustee,
Superior Court, Judicial District of Waterbury, October 17, CT Page 10554 1984, Kenneth J. Zarrilli, STR.)
Attorney Jonathan Bowman, who represented Woodlake Village, Incorporated when the subject easement was given, testified that the said easement called for everyone to pay their pro rata share of the maintenance and repairs to the said Woodlake Road and that if there were no units on the upper parcel (plaintiff's parcel) which there are not, then the owner(s) of the upper parcel pay nothing for said repairs and maintenance. Both parties have filed extensive briefs stating their positions and explaining what they feel is meant by the easement language. The key term in the easement is "pro rata." According to Webster's Third New International Dictionary, the word "pro rata" means proportionately, according to some exactly calculable factor (as share, liability, period of time) in proportion. The word "maintain" is defined as to keep in a state of repair, efficiency, or validity, to preserve from failure or decline;Webster's Third New International Dictionary. The word "repair" is defined as to restore by replacing a part or putting together what is torn or broken; to restore to a sound or healthy state Ibid.
From the evidence, the court finds that the purpose and/or intent of the easement was to facilitate the development of the defendant's condominiums. Without the easement, the condominiums would never have been approved and granted a Certificate of Occupancy by the Town unless another way of egress and ingress to a public road was found for them. Thus, from the evidence, this court finds that by the terms of the subject easement, the plaintiff and defendant are responsible for their pro rata share of all repair and maintenance expenses to the said Woodlake Road. This court finds that the pro rata share of each is determined by the number of dwelling units legally using said road. Since there are no such units on the plaintiff's property using said road, and there are 400 condominium units of the defendant using the road, then those 400 condominium units are responsible pro rata for any expense in maintaining, repairing and upkeep of said road. By this the court means that number of units on each property should be added together and each unit is responsible for one share of the total aforesaid expenses relative to the road. Thus, if there were 50 units or houses on the plaintiff's property and 400 condominium units on the defendant's property, each such unit would be responsible for 1/450th of the cost of keeping and maintaining Woodlake Road in good repair. Since there are no units on the plaintiff's parcel CT Page 10555 of land, all maintenance and repairs required for Woodlake Road are the responsibility of the defendant using the formula set forth above.
Leonildo Serra, the retired operations manager of the defendant, testified that in a prior court action, he testified that the defendant was responsible for the maintenance of Woodlake Road. He stated that is what he believed at that time Mr. Serra was the defendant's operations manager from August 3, 1983 to January 1, 1995. He testified that in the past, the defendant had always maintained Woodlake Road and had never sought a contribution from the plaintiff. He testified that in the past, he had kept vendors away from the condominium units and that signs were posted saying that Woodlake Road was only for the use of the condominium owners and their guests. He testified that that wording was changed on said signs after the commencement of this suit. He stated he became aware of the easement and pro rata contribution therein when this suit was commenced.
The court must now review the issue of whether Woodlake Road is at this time in need of maintenance and repair.
The plaintiff called two experts to testify during this trial relative to what has to be done to repair Woodlake Road. Those experts were Jack E. Stephens, a retired college professor and presently, a consultant, and William A. Brennan, the Secretary-Treasurer of the John J. Brennan Construction Co., Inc., of Shelton, Connecticut. Professor Stephens stated he inspected Woodlake Road at least four times between 1991 and 1994. He stated the road is now rapidly deteriorating. He stated that the older a road is, the faster it will deteriorate. Woodlake Road is an asphalt road and is 23 years old. He stated today there are three types of cracks in the road, namely cross cracks, bank of cracks and alligator cracks (longated cracks). He stated that asphalt becomes brittle as it ages and that is now a problem with this road. He stated that in his opinion, the road has not been properly maintained. He testified the deterioration of the road was caused by traffic, underground water (drainage ditch is higher now than when originally built), and surface water flowing along the road. He inspected 6,394 feet of this road, which is the entire road. He stated the road was built in two stages, and the upper portion of the said road which is approximately 1,500 feet is in better condition than the lower portion, which is comprised of approximately 4,900 CT Page 10556 feet. However, Professor Stephens stated that the whole road (approximately 6,400 feet) should be repaired. He stated Woodlake Road has reached its useful life and a new road should be installed.
William A. Brennan testified that his company constructed the upper portion of Woodlake Road, and that he is very familiar with the road. He stated in his opinion, the deterioration of Woodlake Road was caused by the failure to maintain the drainage system and as a result, water got into the sub-base of the road and caused the problems now present in the road.
Professor Stephens testified that the swale at the side of the road has the same problem as the drainage system. He also testified that there are indications of broken pipes in the drainage system.
Professor Stephens and Mr. Brennan reviewed what needed to be done to remedy this situation (Exhibits J and K). They also reviewed the cost of each method of repair. Professor Stephens stated that his cost figures may not be accurate because they are based on costs in the Storrs, Connecticut area, where he resides, and not on costs in the Woodbury, Connecticut area, where Woodlake Road is located. They are also based on costs in April 1994. He stated the labor costs are higher in the Woodbury area than in the Storrs area. While that may be true, the cost figures that the court must use relative to Professor Stephens' testimony are the ones that Professor Stephens used, even though they may reflect cheaper labor costs than are presently available in the Woodbury, Connecticut area. To do otherwise would be to deal in the realm of speculation, which the court cannot do. Professor Stephens discussed "chip sealing", which is a method whereby cold asphalt is sprayed over the road along with chips (stone). This method slows the aging process of the road, but at this point, according to Professor Stephens, would only have a band-aid effect on Woodlake Road. He stated "chip sealing" gains three to five years for a road. The cost of "chip sealing" is approximately 15% of what the other methods discussed hereafter cost. Another method would be to "pulverize in place and resurface." This process is done by pulverizing the present asphalt and using the residue as a base, and then resurfacing the road. The cost to use this method would be $237,215.00, as of April 1994. The next method discussed was the "hammermill pulverizing and surfacing" process. In this process, a machine CT Page 10557 would pulverize the asphalt and base much like the "pulverizing in place and resurfacing" method, discussed above. The cost for this method as of April 1994 would be $264,140.00 The last method discussed by Professor Stephens was the "reconstruction" method, whereby the old road is dug up and you start over again. This is not the best method, according to Professor Stephens, because it does not use the materials present. The cost for this method is $289,070.00 as of April 1994. Professor Stephens stated that if you pulverize the road and resurface it, then it should have a life span of 30 to 40 years, provided the road is properly maintained during that period.
Mr. Brennan testified that in addition to repairing the road, the storm drains and existing roadside swale should be replaced (Exhibit K). He stated that to repair the storm drainage system, including the roadside swale, the cost would be $35,750.00. To repair the existing storm drainage system, it would cost $49,450.00. He then reviewed the repavement options, including the costs. He stated the highest quality repair would be the full depth reconstruction, which would cost $340,350.00. This is the most expensive method, and most disruptive to traffic during construction. The second method he discussed was the "hammermill" process, with a cost of $255,950.00. This method provides a sub-base material superior to the reclaiming method, and eliminates a disposal problem. The last method discussed by Mr. Brennan was the "reclaim option" which would cost $213,200.00. He stated this method was similar to Professor Stephens' "pulverizing in place and resurfacing" method. According to Exhibit K, the "reclaim option" method works well when the sub-base ranges toward sandy, as is the case here.
After hearing the evidence, the court finds that Woodlake Road is in serious need of reconstructive repairs at this time. The road has deteriorated to a point where it needs more than a maintenance program. The evidence was overwhelming on this point. The court will state here that the undersigned and the attorneys for each party viewed Woodlake Road at the start of the trial. That on site inspection was very beneficial to the court.
The court finds that the plaintiff has sustained its burden of proof by a fair preponderance of the evidence on the first count of the complaint. However, the court makes no finding as to whether the transportation of school children over Woodlake CT Page 10558 Road violates Connecticut General Statute § 10-220c, as such a finding is not necessary to this case. Further, the court makes no findings as to the allegations set forth in paragraph #19 of the first count of the complaint, since the plaintiff presented no evidence relative to these allegations. As to the second count in the complaint, the plaintiff has failed to sustain its burden of proof, and the court finds the issues for the defendant on this count.
The plaintiff seeks an injunction requiring the defendant to maintain Woodlake Road and keep it in good repair, or alternatively, an injunction prohibiting the plaintiff and its members from further use of the road. The court denies the plaintiff's request for an injunction as one of the prerequisites of an injunction is that the plaintiff has no adequate remedy at law. Pet v. Department of Health Services, 207 Conn. 346,370 (1988). Here, they do have an adequate remedy at law, namely money damages can compensate them for any loss they might have sustained as a result of the defendant's actions.
After hearing the evidence, this court orders the defendant to pay damages of $298,400.00 to the plaintiff. The plaintiff shall then be responsible for repairing Woodlake Road in accordance with the "reclaim option" in Mr. Brennan's report of May 16, 1994. The court arrived at this figure of $298,400.00 by using the cost figures in Exhibit K, namely, $35,750.00 to repair the storm drainage system, including the roadside swale, and $49,450.00 to repair the existing storm drainage system, and $213,000.00 to repair the road with the "reclaim option" method. The plaintiff shall be responsible to have said Woodlake Road repaired as set forth herein within six (6) months of this date or be subject to a penalty which this court can impose for the failure to do so.
The court is not changing the terms of the subject easement in any way by ordering the plaintiffs to repair said road after payment to them of $298,400.00 by the defendant. However, since the defendant has not repaired and maintained this road in accordance with the terms of the subject easement, the court is ordering the plaintiff to do so as aforesaid. However, in the future, the maintenance and repair of the road shall continue to be the responsibility of the defendant as it has in the past and consistent with this memorandum. By that, the court means that the cost of such repairs and maintenance shall be paid pro rata between the defendant's condominium owners and residences or CT Page 10559 commercial buildings hereinafter constructed on the plaintiff's land. In the unlikely event that the aforesaid repairs cost less than $298,400.00, then any such excess funds shall be repaid to the defendant by the plaintiff.
Judgment may enter accordingly.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN